## GREATER NEW ORLEANS HOMESTEAD ASS'N v. HARVEY.

### No. 14827.

Court of Appeal of Louisiana. Orleans.

Feb. 4, 1935.

For original opinion, see 157 So. 307.

John J. Wingrave, of New Orleans, for appellant.

Dresner & Dresner, of New Orleans, for appellee.

JANVIER, Judge.

Greater New Orleans Homestead Association, alleging that Seth Harvey is indebted unto it in the sum of $852.08, with interest, seeks judgment for that amount and avers that on February 16, 1932, the said Harvey entered into a written contract—which is attached to the petition; that under the terms of the said contract he agreed to buy a certain lot of ground in New Orleans and to pay the balance due thereon at the rate of $9 per month; that Harvey made payments thereon until July 16, 1932, but has failed to pay any further amounts since that time: that the balance is still unpaid and that, in addition, petitioner has paid certain taxes due on the said property, which taxes the said Harvey failed to pay; that petitioner is "ready and able and willing to deliver merchantable title to said property to said defendant and to fully comply with its said contract with said defendant, but that said defendant has failed to carry out said contract as aforesaid notwithstanding amicable demand."

Harvey admits that he entered into the contract to purchase the lot in question, but he alleges that he also agreed with the then owner that, instead of paying for the lot in cash, as stipulated for in the contract, he should clear and remove all the underbrush and stumps from certain other lots belonging to the then owner and that, in consideration for his doing this work, the then owner would allow him a credit of $785 on the purchase price of the said lot. He alleges that he has completed the work which he con-

tracted to do and, therefore, that he "is entitled to have the lot * * * transferred into his name." In his answer he does not allege that the plaintiff failed to put him in default by failing to tender title to the lot, but contends solely that the true agreement was that he was to obtain title to the lot upon the completion by him of the work referred to.

Plaintiff maintains that there was no such agreement with the then owner and that the true agreement is evidenced by the written contract, which provides for payment in monthly installments to be paid in cash.

On this issue the matter went to trial below and there was judgment for plaintiff as prayed for. Harvey appealed, and, when the matter came before us, we felt that on the issue which was thus tendered "there should be an affirmance of the judgment of the trial court for the reason that * * * the defenses raised by the pleadings were untenable." See Greater New Orleans Homestead Ass'n v. Harvey (La. App.) 157 So. 307. We felt, however, that, since there was no allegation in plaintiff's petition that there had been a tender to Harvey of the title to the lot in question, we could not ignore the requirements of article 410 of the Code of Practice that there can be no successful suit for specific performance of a contract looking to the sale of real property unless there has been a tender of title to the property, and we dismissed plaintiff's suit because its petition contained no specific allegation to the effect that there had been such a tender.

Our attention has now been called to several decisions in which two applicable principles have been clearly enunciated. The first is that there is no necessity to allege, nor to prove tender, where the actions of the obligor show plainly that tender would be a vain and useless ceremony, and the second is that a want of tender, if it is to be relied upon as a defense in a suit for the passive breach of a contract, must be affirmatively alleged.

Where a contract has been passively breached, a putting in default is necessary, first, for the purpose of establishing the time from which damages for the breach shall commence to run, and also because, where there has been a passive breach, manifestly he who has breached the contract only by inaction and has not otherwise shown that he does not intend to carry out his obligation should be given an opportunity to affirmatively declare his intention of not complying. The law, therefore, wisely requires that he who passively breaches a contract should have his attention called to the contract and that he should be placed "in mora"; that is to say, that he should be requested to perform. This is not required where there has been an active breach, because the active breach has, in itself, affirmatively and definitely shown that there is no intention to perform.

For the same reason, where the obligor has passively breached the contract and has, in addition, definitely and affirmatively shown that he has no intention of performing, then to require a putting in default would be to require a vain and useless ceremony.

Where a prospective purchaser, under a contract such as that involved here, has not only failed to make payment, but has also affirmatively declared that there is no obligation on him to do so, then to require the prospective vendor to make a formal tender would be to require a vain and useless act and to entail, possibly, an unnecessary expenditure.

Therefore, although, prior to the filing of this suit, before Harvey had definitely refused to pay for and to accept title to the property, it might have been necessary for plaintiff to have tendered title, still, when Harvey, as a defense to the suit, did not object to the want of tender, but set up another defense and denied all obligation under the contract sued on, it immediately appeared that a tender would have been useless and unavailing. The thought which we have in mind is well expressed in 58 C. J., page 1081, § 341, title "Specific Performance," in which appears the following: "Whatever contrariety of opinion exists as to the original necessity of tendering a deed before suit, in accordance with rules elsewhere considered the decisions are in accord in excusing a tender where the purchaser expressly repudiates the contract or takes such a position with reference to it that a tender would be useless and idle ceremony."

Again, in the same work, in vol. 62, at page 658, § 5, title "Tender," it is said that: "A tender is waived where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as the position taken by him is maintained, a vain and idle ceremony; as * * * by denying the existence of a binding contract. * * *"

In MacLeod v. Hoover, 159 La. 244, 105 So. 305, 306, the Supreme Court of Louisiana said: " * * * No tender at all was necessary, since the law does not demand any one

to do a vain and useless thing, and a formal tender is not required, where it would be made to no purpose."

In Ronaldson & Puckett Co. v. Bynum, 122 La. 687, 48 So. 152, 154, a suit for specific performance of a contract for the sale of real estate, the court said: "Defendant denied that there was any binding contract. That of itself has been held by this court in several cases as relieving from the necessity of making formal tender."

That is exactly the situation presented here. Defendant, Harvey, denied that there was any contract which required him to pay the price in order to receive title to the property. It would have been a useless waste of time and effort to have made a formal tender.

In Reinach v. Jung, 122 La. 610, 48 So. 124, 125, also a suit for specific performance, the court said: " * * * The defendant denied the existence of the contract. Tender is not necessary if the contract itself is denied."

In Beck v. Fleitas, 37 La. Ann. 492, is found the following:

"It follows, therefore, that the rule does not apply to the case of a party who absolutely denies the existence of the contract, as it is not probable that he would in such a case offer to execute a contract which he entirely ignores.

"Hence it has frequently been held by this Court that in such cases the putting in default was not necessary. New Orleans & Nashville R. R. Co. v. Ganalh, 18 La. 510; Hivert v. Lacaze, 3 Rob. 357; Abels v. Glover, 15 La. Ann. 247."

See, also, Schleider v. Dielman et al., 44 La. Ann. 462, 10 So. 934; Cotton v. Jennings Irrigating Co., Ltd., 108 La. 4, 32 So. 193; Allen v. Steers, 39 La. Ann. 586, 2 So. 199.

■ It is equally well settled that, even where a putting in mora by the making of a tender is a necessary prerequisite to a suit for specific performance, nevertheless the failure of the plaintiff to allege the tender must be taken advantage of by a plea in limine if it is to be availed of as a defense. In Beck v. Fleitas, supra, the court, referring to the contention that the obligor had not been put in default, said that the "failure to plead that defense * * * must be construed as a waiver of the formality of putting in default." It is true that in Livingston v. Scully, 38 La. Ann. 781, is found a case in which a different view seems to have been taken. There the court quoted with approval

from several earlier cases, in one of which, Hepp v. Commagere, 10 Rob. 524, the court said: "This putting in default being, under our law, an indispensable pre-requisite to sustain an action of this kind, it was not necessary to plead the want of it specially, nor is it waived by the defence set up in the answer."

See, also, Hodge v. Moore, 3 Rob. 400; Sewell v. Willcox, 5 Rob. 83; Vance v. Tourne, 13 La. 225–229; Llorente v. Gaitrie, 6 Mart. (N. S.) 623.

However, in several later cases the view adopted in Beck v. Fleitas has prevailed, and we prefer to follow that presently accepted view not only because the later decisions are binding by reason of authority, but because they control by authority of reason.

In Ware v. Berlin, 43 La. Ann. 534, 9 So. 490, 491, is found the following:

"In his brief the defendant urges that as a prerequisite to the bringing of the suit the plaintiff should have put him in default by offering to return to him the amount paid to the plaintiff and the notes representing the balance of the purchase price of the property.

"There was no exception filed alleging a failure to make the tender, nor was there any special plea, either separately, or in the answer that urged this objection. It is too late to wait until after the trial to make this plea. It should have been pleaded specially or set up in limine.

"It cannot be urged in the appellate court for the first time."

In the case at bar the fact that no tender had been alleged was noticed for the first time by this court and then only after the case had been submitted.

In Woodward-Wight & Co. v. Engel Land & Lumber Co., 123 La. 1094, 49 So. 719, which was a suit on two notes given in payment for two "skidder" outfits, the defendant resisted payment on the ground that "there was a failure of consideration, in that the 'skidders' proved to be faulty in design." It was contended that this defense could not be heard because the "skidders" had not been tendered back to the plaintiff and that tender is an essential prerequisite to a claim for the return of the purchase price in such situation. The court found that this contention should have been made in the court, a qua. Note the following: "Nor do we find the plaintiff more fortunate in urging (in this court, for the first time, as we understand it) the objection that defendant has made no tender

of the skidders. The objection should have been specially pleaded. Wood v. Nicholls, 33 La. Ann. 744; Ware v. Berlin, 43 La. Ann. 536, 9 So. 490. Moreover, by the institution and prosecution of this suit, for the balance of the price of the skidders, plaintiff, in effect, declared its intention to enforce the contract, and made it evident that a tender in avoidance of that contract would have been but a vain thing."

■ Defendant contends that we cannot award to plaintiff a decree against defendant because this is not a suit for specific performance, but is a suit on a money demand alone, and that in such a suit as this there can be no judgment for the purchase price unless there is also a judgment ordering the delivery of title to the property. It is true that plaintiff did not pray that defendant be ordered to accept title to the property in question, but the entire petition indicates a desire on the part of plaintiff to transfer title upon payment of the purchase price. We note in the petition the following: "Petitioner further avers that it is ready and able and willing to deliver merchantable title to said property to said defendant and to fully comply with its said contract with said defendant, but that said defendant has failed to carry out said contract as aforesaid, notwithstanding amicable demand."

We find that, inartistic as the petition may be, it does present a claim which, in all essential particulars, is one for specific performance. In Woodward-Wight & Co. v. Engel Land & Lumber Co., supra, which "was begun as an ordinary action, upon two promissory notes," the court found that there should be judgment in reconvention for defendant, but also found that, as a necessary correlative to that judgment, the property should be ordered transferred back to plaintiff, and the court also found that there had been no offer or tender to transfer or return the property. But the court did not for that reason refuse to affirm the judgment in favor of the reconvener. On the contrary, it affirmed the judgment, but made it conditional upon the transfer back to the plaintiff of the property sold. The court said: "We are, however, of opinion that the machines, in the condition in which they now are, should be returned, as a condition precedent to the execution of the judgment for the repetition of the amount paid on account of the price."

The identical question now under discussion was raised in the matter entitled Lassus v. Gourgott, 169 La. 577, 125 So. 623, in which, as the result of the failure of the prospective purchaser to comply with the agreement to purchase, the other party brought suit for the purchase price of the property. There was an exception of no cause of action. The Supreme Court stated that this exception was based "upon the theory that the suit is not one for specific performance or one for damages as provided in such cases, but is a suit for a money judgment pure and simple." There there was no specific allegation that the property had been tendered. An examination of the petition shows that the plaintiff alleged that it was ready and willing to deliver title, which is almost the identical allegation made by plaintiff in the case at bar. There, also, there was an allegation that the defendant was unwilling to carry out the terms of the contract and here there is the allegation "that said defendant has failed to carry out said contract as aforesaid notwithstanding amicable demand." The court considered all of the questions which we have discussed and stated that, though the petition did not specifically and in detail contain the allegations which are usual in a suit for specific performance, nevertheless the suit should be considered as one for that purpose. The court said:

"The lower court treated the action as one for specific performance, and we concur in that conclusion.

"It is true the petition does not use the terms commonly employed in an action for specific performance and does not expressly call upon the court to order the defendant to accept title and pay the agreed price, but when considered as a whole and in connection with the prayer the petition in all essential respects presents a case in which specific performance is the appropriate and responsive decree to be rendered."

We do not believe that that case can be distinguished from the case at bar.

There should be judgment in plaintiff's favor in accordance with the terms of the contract. There should also be a correlative judgment ordering the transfer of good and valid title to the defendant and the rights of plaintiff to collect the purchase price should be protected by the retention of vendor's lien.

It is therefore ordered, adjudged, and decreed that our original decree herein be and it is recalled and annulled, and it is now ordered that there be judgment in favor of plaintiff, Greater New Orleans Homestead Association, and against Seth Harvey, defendant, in the full sum of $852.08, with interest at the rate of 8 per cent. per annum

from July 16, 1932, on $826.72, and with interest at the rate of 5 per cent. per annum on $25.36 from judicial demand, subject to a credit of $2.75.

It is further ordered that, as a condition precedent to the execution of the judgment in favor of plaintiff, the said plaintiff shall, within sixty days from the entry of this decree, tender to defendant good, valid, and merchantable title to lot No. 23, square B, Third district of this city.

It is further ordered that, in the event defendant, Seth Harvey, fails to pay, or is unable to pay the amount of this judgment, this judgment shall represent title to the said property, subject, however, to vendor's lien for the said purchase price.

Defendant, Harvey, to pay all costs.

Original decree recalled; judgment of trial court amended and affirmed.